1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8

9   JOHN DOE, Inc., an Oregon
Corporation,

10          Plaintiff,

11       v.

12   GEORGE and JANE DOE FEARING,
and the marital community comprised
13   thereof; JOHN G. and JANE DOE
SCHULTZ and the marital community
14   comprised thereof; WILLIAM E. and
JANE DOE DAVIS and the marital
15   community comprised thereof; JOHN
and JANE DOES 1-5 and the marital
16   community comprised thereof;
LEAVY, SCHULTZ, DAVIS &
17   FEARING, a law firm,

18          Defendants.

NO.  CV-05-5090-RHW

**ORDER DENYING
PLAINTIFF'S MOTION TO
SEAL; DENYING
PLAINTIFF'S MOTION TO
REMAND; DENYING
DEFENDANT'S MOTION TO
DISQUALIFY DAN'L
BRIDGES**

19

20       Before the Court are Plaintiff's Motion to Seal (Ct. Rec. __); Defendant's

21   Motion to Disqualify Counsel Dan'L Bridges (Ct. Rec. 8); and Plaintiff's Motion

22   to Remove Case to State Court (Ct. Rec. 47).  A hearing was held on the motions

23   on August 9, 2006.  Plaintiff was represented by Dan'L Bridges; Defendants were

represented by George Telquist.

24                         **BACKGROUND FACTS**

25       The above-captioned case is the culmination of two other lawsuits that

26   involve the same attorneys on opposing sides: one that was filed in Franklin

27

28   **ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING
PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S
MOTION TO DISQUALIFY DAN'L BRIDGES ~ 1**

County Superior Court, which resulted in a settlement agreement,[1] and one that was filed in the Eastern District of Washington, which was remanded back to state court after the federal claim was dismissed.[2]  The case currently before this Court began on August 31, 2005, when Defendants were served with a copy of a complaint filed by Plaintiff in Franklin County Superior Court.  Plaintiff filed its lawsuit under the pseudonym John Doe.  It is not clear when Plaintiff filed the complaint, but on August 19, 2005, a Temporary Restraining Order (TRO) was entered in which Defendants were prohibited from filing information identifying Plaintiff by name until the court was able to hear Plaintiff's Motion to Seal.  A hearing was set for September 16, 2005, but before the hearing was held, Defendants removed the case to the Eastern District of Washington.

Defendants are individual lawyers and their law firm.  Previously, Defendants were involved in representing West One Automotive employees in lawsuits against West One Automotive.  Specifically, Defendant George Fearing represented Arnold Haag, Alex Tovar, and Brad Bolas in Franklin County Superior Court.[3]  After mediation, the lawsuit between West One Automotive Group and its employees settled, and the parties entered into settlement agreements.  Each employee signed a settlement agreement.  The attorney for West One Automotive, Dan'L Bridges, and the employees' attorney, George Fearing, also signed the settlement agreements.

The settlement agreements read in part:

The parties and their counsel (which for purposes of this provision

---

[1]*Arnold Haag v. West One Automotive Group,* 03-2-50025-1.

[2]*Alex Tovar v. Bill McCurley Chevrolet*, CR-03-5124-RHW.

[3]According to the now-Defendants, during the course of this lawsuit, Mr. Fearing garnered evidence that West One Automotive Group tampered with witnesses.

**ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 2**

mean George Fearing and the law firm of Leavy, Schultz, Davis & Fearing, P.S. and Dan'L Bridges and the Law Offices of Dan'L W. Bridges) shall keep confidential the terms of this Agreement and shall not reveal, disclose, make known, discuss, rely or in any other manner permit to be known by any other person or entity, either directly or indirectly, in whole or in part, any of the terms of the Agreement <u>or the substance of the allegations in the lawsuit resolved herein nor their knowledge or belief relating to those allegations</u>, except the parties may state that the matter has been resolved on mutually acceptable terms <u>(and without admission of fault or liability by WEST ONE AUTOMOTIVE GROUP, INC, by whom liability continues to be denied</u>).

(Emphasis in the original).

The Settlement Agreements provided for the following payments made by West One Automotive Group, Inc. to the respective plaintiffs:

| | |
|---|---|
| Arnold Haag | $56,000 |
| Alex Tovar | $29,000 |
| Brad Bolas | $25,000 |

In November, 2003, Defendant Fearing represented Alex Tovar in a second lawsuit brought against Bill McCurley Chevrolet, a car dealership in Pasco. That case was removed to the Eastern District of Washington. In February, 2005, this Court dismissed the federal claim, and remanded the case back to state court. Prior to the remand, Mr. Bridges had filed motions in limine. Mr. Bridges sought to exclude testimony and evidence that witnesses were pressured not to testify at Mr. Tovar's employment security hearing.

The following statement appeared in the pleadings:

> Instead, it appears, and knowing this is undertaking the grave risk of creating the appearance of engaging in an ad hominem argument, that alleging the pressuring of witnesses is simply an ongoing tactic of plaintiff's counsel. This is the second case the undersigned has had with plaintiff's counsel. In this case, as with the last, every time the employer or the undersigned attempted to speak to a witness we were accused of witness tampering or pressuring witnesses. However, apparently plaintiff's counsel's speaking to witnesses to the point of ongoing phone calls in the evening to employees after they asked him to stop was appropriate.

(CR-03-5124-RHW [Ct. Rec. 43]).

**ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 3**

In his responsive pleadings, Alex Tovar filed evidence from the *Arnold Haag v. West One Automotive Group* case to refute the allegations that his counsel routinely alleges that opponents tamper with witnesses. Specifically, his counsel George Fearing filed a Declaration in which he made the following statement:

> In Franklin County Superior Court, I represented Arnold Haag, Jr. In a lawsuit brought against his former employer, West One Automotive Group. Haag sued the former employer because the employer fired him for complaining about rampant pornography on the work premises and drug usage by West One Automotive Group managers. Dan Bridges represented West One Automotive Group in that lawsuit.
>
> After Arnold Haag filed his lawsuit, West One Automotive Group engaged in intimidation of other employees. West One Automotive Group managers called employees into the office and told them they needed to remember who gave them work and asked them if they had spoken to Arnold Haag or his attorney. Employees Alex Tovar and Brad Bolas refused to keep quiet about the pornography and both were then fired from employment with West One Automotive Group. Thereafter, Alex Tovar and Brad Bolas joined Arnold Haag's lawsuit as additional plaintiffs.

Mr. Fearing attached the following documents to his declaration:

1. Affidavit of Lloyd Wall, June 15, 2004;

2. Pages 3-6 of deposition of Lloyd Wall;

3. Affidavit of George Fearing in Support of Plaintiff's Motion to Strike Defendant's Answer and in Opposition to Defendant's Motion for Summary Judgment, December 9, 2003, without attachments;

4. Affidavit of Brad Bolas, December 10, 2003;

5. Affidavit of Kristi Flyg in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion to Strike Answer, December 9, 2003, with attachments.

(CR-03-5124-RHW [Cts. Rec. 50, 51]).

The Affidavits had been previously filed in Franklin County Superior Court, *Arnold Haag v. West One Automotive Group, Inc.*, 03-2-50025-1.

In the complaint that is currently before the Court, Plaintiff alleges that the

**ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 4**

1    above-listed material filed by Defendant Fearing in the *Alex Tovar* federal case

2    were within the scope of the confidential information set forth in the Settlement

3    Agreement, and the filing of the material violated the terms of the Settlement

4    Agreement.  Plaintiff is seeking damages for breach of contract, injunctive relief,

5    and attorneys fees.[4]

6        Currently there are a number of outstanding motions before the Court,

7    including pending motions for summary judgment.  This order addresses Plaintiff's

8    Motion to Seal, Defendants' Motion to Disqualify Counsel Dan'L Bridges, and

9    Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction.

10   **I.    Plaintiff's Motion to Seal**

11       Plaintiff filed its Complaint as John Doe, an Oregon Corporation.  Plaintiff

12   now moves for an order sealing the court file in this matter.  Plaintiff asserts that it

13   only filed this Complaint to prevent Defendants from disseminating information

14   regarding a prior lawsuit.  Plaintiff argues that it is unfair to require it to endure

15   further injury by the filing of materials in this case.  Plaintiff proffers there is

16   nothing of public importance in this case; it is merely an argument about an already

17   settled argument between two private parties.

18       Plaintiff also argues that because the state court already entered such an

19   order before the case was removed, the full faith and credit clause would suggest

20   that this Court should rely on that order.  It is true that the state court entered an *ex*

21   *parte* TRO.  Even so, it was entered prior to the Defendants being served with a

22

23       [4]The Settlement Agreements contained the following language:

24   <u>Attorneys' Fees</u>.  If any party to this Agreement initiates any
     proceedings to adjudicate any issues arising under this Agreement, the
25   party to such proceeding who is the prevailing party shall be entitled
     to reimbursement of its attorneys' fees, costs, expenses, and
26   disbursements (including arbitration fees and expenses) reasonably
     incurred or made by the prevailing party from the party who does not
27   prevail.

28

**ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING
PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S
MOTION TO DISQUALIFY DAN'L BRIDGES ~ 5**

1  copy of the Summons and Complaint, and expired after 28 days.  The Court

2  declines to give full faith and credit to an expired TRO.

3      Within the Ninth Circuit, there is a strong presumption in favor of access to

4  court records.  *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)

5  (recognizing strong presumption in context of civil trial).  The common law right

6  of access, however, is not absolute and can be overridden given sufficiently

7  compelling reasons for doing so.  *San Jose Mercury News, Inc. v. United States*

8  *District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999).  In making the determination,

9  courts should consider all relevant factors, including the public interest in

10 understanding the judicial process and whether disclosure of the material could

11 result in improper use of the material for scandalous or libelous purposes or

12 infringement upon trade secrets.  *Id.*  After taking all relevant factors into

13 consideration, the district court must base its decision on a compelling reason and

14 articulate the factual basis for its ruling, without relying on hypothesis or

15 conjecture. *Hagestad*, 49 F.3d at 1434.

16     The United States Supreme Court has articulated a two-part "experience and

17 logic test" for determining whether a right of access attaches to a particular kind of

18 hearing.  *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8

19 (1986).  The "experience" prong of the test questions "whether the place and

20 process have historically been open to the press and general public."  *Id.*  The logic

21 inquiry focuses on "whether public access plays a significant positive role in the

22 functioning of the particular process in question."  *Id.*  If a proceeding fulfills both

23 parts of the test, a qualified First Amendment right of access arises, to be overcome

24 "only by an overriding interest based on findings that closure is essential to

25 preserve higher values and is narrowly tailored to serve that interest."  *Id.* (Citation

26 omitted).

27     There are no precise antecedents in English common law since the

28 **ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 6**

Anglo-Saxon tradition eschewed closed trial proceedings. *Phoenix Newspapers, Inc. v. United States District Court*, 156 F.3d 940, 947 (9th Cir. 1998). "Indeed, there is little record, if any, of secret proceedings, criminal or civil, having occurred in known English history." *Gannett Co. v. DePasquale*, 443 U.S. 368, 420 (1979)(J. Blackmun, concurring). "[N]ot even the Court of Star Chamber, the name of which has been linked with secrecy, conducted hearings in private." *Id.*

In *Phoenix Newspapers, Inc.* the Circuit held that the district court erred in denying access to a hearing transcript without complying with the procedural and substantive requirements for sealing the record from the public. *Id.* at 942. In that case, the criminal proceeding involved the sitting governor of the state of Arizona. The Court held that if a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives. *Id.* at 949.

Here, Plaintiff has not articulated a compelling reason for overcoming the right of the public to access the court records. The Court also notes that over a year has passed since the complaint was first filed. The case was removed to federal court on September 13, 2005, and Plaintiff did not file its motion to seal until November 14, 2005. Moreover, Plaintiff agreed to several continuances that prolonged the time the Court would hear the motion. In the meantime, numerous pleadings have been filed that provide the identity of Plaintiff. Plaintiff's claims of harm have been minimized by the passage of time.

Additionally, Plaintiff has not set forth a compelling reason for continuing to prosecute this case under a pseudonym. Parties in federal court may use pseudonyms in the "unusual case" when nondisclosure of the party's identity "is necessary. . . to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (*quoting United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir.

**ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 7**

1981)).  A party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity.  *Id.*

Nothing in the record indicates that this is the type of "unusual case" that would justify having Plaintiff be referred to as John Doe throughout the course of the proceedings.

## II.    Defendants' Motion to Disqualify Dan'L Bridges

Defendants assert that counsel for Plaintiff violated the confidentiality agreement first, and as such, holds testimony on a contested matter and could be a potential witness.  Specifically, Defendants argue that Mr. Bridges' testimony could be relevant to whether Plaintiff waived its claims with respect to the settlement agreement.

The Court has authority to disqualify an appearing attorney on the ground that the attorney will be a witness in the case.  *Optyl Eyewear Fash. Int'l Corp. v. Style Co.*, 760 F.2d 1045, 1048 (9th Cir. 1985).  The primary considerations for whether an attorney should be disqualified are: (1) whether an attorney ought to be called to testify on behalf of his client; or (2) whether the attorney may be called other than on behalf of his client and his testimony is or may be prejudicial to the client.  *Id.*

Here, the issue of waiver can be decided based on the pleadings that were filed in the respective cases, and it does not appear that Mr. Bridges' testimony would be required.  Accordingly, it is not necessary to disqualify Mr. Bridges from this case.

## III.    Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Plaintiff argues that the Court lacks diversity jurisdiction over this pending case.  Defendants removed the case to federal court, relying on diversity

**ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 8**

jurisdiction, 28 U.S.C. § 1332.[5]  In their removal notice, Defendants asserted that they are citizens of the state of Washington, Plaintiff is an Oregon corporation, and the amount in controversy exceeded $75,000.

### A.    Amount in Controversy

In its motion, Plaintiff states that it is willing to limit damages to $74,999. At the hearing, Plaintiff appeared to concede that it would not be entitled to any damages under Washington law, and asked for a nonsuit in its request for damages. Plaintiff also appeared confused in regard to whether it had asked for damages, and if it did, what amount of damages it had plead in its complaint.

The complaint contains the following language:

The plaintiff requests the following relief:

1.    An award of money damages for per se damage to its reputation, attorney's fees, costs, and the failure of consideration upon the contract in the amount of the full consideration paid by the plaintiff as valuable consideration in exchange for the defendants' promise to perform upon it.

(Ct. Rec. 3).

The total amount of the settlement agreements is $110,000.  Generally, "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v.*

---

[5](a)  The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between– (1) citizens of different States.

(c)  For purposes of this section– (1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.

28 U.S.C. § 1332.

**ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 9**

1    *National Ass'n of Sec. Dealers*, 159 F.3d 1209, 1213 (9ᵗʰ Cir.1998).  This rule holds

2    especially true in situations where an amended complaint attempts to destroy

3    federal jurisdiction after the case has been properly removed.  *Id.*

4        Based on the face of the Complaint, the amount in controversy is at least

5    $75,000, and it meets the first of the § 1332 requirements.

6        **B.    Diversity of Citizenship**

7        The second element needed to establish diversity jurisdiction is the

8    requirement that the parties be citizens of different states. 28 U.S.C. § 1332.  Here,

9    it is undisputed that Defendants are citizens of Washington.  Defendants argue that

10   Plaintiff is a citizen of Oregon, thereby establishing diversity of citizenship.

11   Plaintiff insists it is a citizen of Washington.

12       A corporation is a citizen of any State by which it has been incorporated and

13   of the State where it has its principal place of business.  28 U.S.C. § 1332(c).

14   Plaintiff is incorporated in the state of Oregon.  The question the Court must decide

15   is whether Oregon is Plaintiff's principal place of business.  There are two tests

16   federal courts apply to determine whether a corporation's principal place of

17   business is in a particular state: (1) the place of operations test; and (2) the nerve

18   center test.  *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495,

19   500 (9ᵗʰ Cir. 2001).

20       The place of operations test locates a corporation's principal place of

21   business in the state which "contains a substantial predominance of corporate

22   operations."  *Id.*  The "nerve center test" locates a corporation's principal place of

23   business in the state where the majority of its executive and administrative

24   functions are performed.  *Id.*  Courts should apply the place of operations test

25   unless it is shown that the plaintiff's activities do not substantially predominate in

26   any one state.  *Id.* ("*The "nerve center" test should be used only when no state*

27   *contains a substantial predominance of the corporation's business activities.*"

28   **ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING**
     **PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S**
     **MOTION TO DISQUALIFY DAN'L BRIDGES ~ 10**

1  (Emphasis in original)).

2      Under Ninth Circuit precedent, determining whether a corporation's

3  business activity substantially predominates in a given state requires a comparison

4  of that corporation's business activity in the state at issue to its business activity in

5  other individual states.  *Id.*  The substantial predominance does not require that the

6  majority of a corporation's total business activity to be located in one state, but

7  instead, requires only that the amount of a corporation's business activity in one

8  state be significantly larger than any other state in which the corporation conducts

9  business.  *Id.*  Generally, courts look at a number of factors to determine if a given

10  state contains a substantial predominance of corporate activity, including the

11  location of employees, tangible property, production activities, sources of income,

12  and where sales take place.  *Id.*

13      Here, the majority of the rental stores and sales stores are in Oregon.   The

14  following are the statistics regarding store locale:

|         | Rental |      | Sales |     | Total |     |
|---------|--------|------|-------|-----|-------|-----|
| **Oregon** | 6   | 60 % | 5  | 70% | 11 | 65% |
| **Wash.**  | 4   | 40%  | 2  | 30% | 6  | 35% |
| **Total**  | 10  |      | 7  |     | 17 |     |

19      Likewise, the income, the number of employees, and the wages and salaries

20  are greater in Oregon:

|                      | **Oregon Stores** | **Washington Stores** |
|----------------------|-------------------|------------------------|
| Income last 5 years  | $450 million      | $200 million           |
| Number of employees  | 209/249           | just over 100          |
| Salary/wages - 2004  | $7,017,461        | $4,281,054             |
| Salary/wages - 2005  | $9,879,841        | $2,975,434             |

26      Here, it cannot be said that no state contains a substantial predominance of

27  its corporate operations.  Thus, under Ninth Circuit precedent, the Court should

28  **ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 11**

apply the place of operations test.  In doing so, it is clear that Plaintiff's activities substantially predominate in Oregon, and the principal place of Plaintiff's business is Oregon.

Because Defendants have shown that the amount in controversy exceeds $75,000 and there is diversity of citizenship, the Court has subject matter jurisdiction to hear this case.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion to Seal (Ct. Rec. ___) is **DENIED**.

2. Within 10 days from the date of this Order, Plaintiff is ordered to amend its Complaint to include its legal name.  Plaintiff is advised that failure to do so could result in dismissal of the above-captioned case.

3. Defendant's Motion to Disqualify Dan'L Bridges (Ct. Rec. 8) is **DENIED**.

4. Plaintiff's Motion to Remove Case to State Court (Ct. Rec. 47) is **DENIED**.

5. A hearing on Defendants' Motions for Summary Judgment (Ct. Rec. 2, 24) and Plaintiff's Motion Pursusant [sic] to FRCP11 for Costs (Ct. Rec. 19) is **set** on **November 1, 2006,** at **2:00 p.m.**, in Richland, Washington.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 15th day of September, 2006.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2005\Doe\denyremand.wpd

**ORDER DENYING PLAINTIFF'S MOTION TO SEAL; DENYING PLAINTIFF'S MOTION TO REMAND; DENYING DEFENDANT'S MOTION TO DISQUALIFY DAN'L BRIDGES ~ 12**